**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **CLAUDE FARMER, JOSE L. SALINAS** | § | **JURY TRIAL DEMANDED** |
| **and RICARDO RODRIGUEZ, individually** | § | |
| **and on behalf of all others similarly situated** | § | |
| | § | |
| | § | **COLLECTIVE ACTION** |
| *Plaintiffs,* | § | **PURSUANT TO 29 U.S.C. § 216(b)** |
| **v.** | § | |
| | § | |
| **EXCELL OPERATING, INC., d/b/a** | § | **CLASS ACTION PURSUANT TO RULE** |
| **EXCELL OPERATING COMPANY, INC.** | § | **23** |
| **BULLZEYE OILFIELD SERVICE LLC,** | § | |
| **THOMAS L. SWAREK, MICHAEL BOOTHE,** | § | |
| **KEITH MAXEY, and ZACKRY MAXEY** | § | |
| | § | |
| *Defendants.* | § | |

## ORIGINAL COLLECTIVE & CLASS ACTION COMPLAINT

Plaintiff Claude Farmer, brings this action individually and on behalf of all current and former non-exempt Hourly Oilfield Workers[1] (hereinafter "Hourly Plaintiff and the Putative Collective Members") who worked for Excell Operating, Inc., d/b/a Excell Operating Company, Inc., Bullzeye Oilfield Service LLC, Thomas L. Swarek, Michael Boothe, Keith Maxey, and/or Zackry Maxey ("Defendants") at any time from May 7, 2021, through the final disposition of this matter, to recover compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 216(b). Hourly Plaintiff also brings a Rule 23 class action to recover unpaid wages under a common-law *quantum meruit* claim of unjust enrichment.

Plaintiff Jose L. Salinas brings this action individually and on behalf of all current and former

---

[1] Hourly Oilfield Workers include Gate Guards, Floor Hands, Drillers, Mechanics, Mechanic Helpers, Derrick Hands, Operators, Truck Drivers, Floor Hands / Derrick Hands, Derrickmen, Hot Shot Drivers, Sand Blasters, and Shop Supervisors.

Day Rate Oilfield Workers[2] who were paid a day rate but no overtime (hereinafter "Day Rate Plaintiff and the Putative Collective Members") who worked for Excell Operating, Inc., d/b/a Excell Operating Company, Inc., Bullzeye Oilfield Service LLC, Thomas L. Swarek, Michael Boothe, Keith Maxey, and/or Zackry Maxey ("Defendants") at any time from May 7, 2021, through the final disposition of this matter, to recover compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 216(b). Day Rate Plaintiff also bring a Rule 23 class action to recover unpaid wages under a common-law *quantum meruit* claim of unjust enrichment.

Plaintiff Ricardo Rodriguez brings this action individually and on behalf of all current and former Salaried Oilfield Workers[3] who were paid a salary and no overtime (hereinafter "Salary Plaintiff and the Putative Collective Members") who worked for Excell Operating, Inc., d/b/a Excell Operating Company, Inc., Bullzeye Oilfield Service LLC, Thomas L. Swarek, Michael Boothe, Keith Maxey, and Zackry Maxey ("Defendants") at any time from May 7, 2021, through the final disposition of this matter, to recover compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 216(b). Salary Plaintiff also brings a Rule 23 class action to recover unpaid wages under a common-law *quantum meruit* claim of unjust enrichment.[4]

---

[2] Day Rate Oilfield Workers include Rig Superintendents, Rig Supervisors, Supervisors, and Tool Pushers.

[3] Salaried Oilfield Workers include Coil Tubing Managers, Frac Manager, and Supervisors.

[4] All Hourly Plaintiffs, Day Rate Plaintiffs, and Salary Plaintiffs are collectively referred to as "Plaintiffs".

# I.
## OVERVIEW

1.      These are collective actions to recover overtime wages and liquidated damages brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19 to recover unpaid wages, overtime wages, and other applicable penalties.

2.      Plaintiffs also bring class actions pursuant to Federal Rule of Civil Procedure 23(b)(3) to recover the straight-time wages owed to them and all other current and former similarly situated employees for work they performed for which they were not paid.

3.      Hourly Plaintiff and the Putative Collective/Class Members are those persons who are current and former non-exempt employees of Defendants who have worked as Hourly Oilfield Workers throughout the United States at any time from May 7, 2021, through the final disposition of this matter.

4.      Hourly Plaintiff and the Putative Collective/Class Members routinely worked (and continue to work) in excess of forty (40) hours per workweek.

5.      Day Rate Plaintiff and the Putative Collective/Class Members are those persons who are current and former non-exempt employees of Defendants who have worked as Day Rate Oilfield Workers throughout the United States at any time from May 7, 2021, through the final disposition of this matter, who were paid a day rate but no overtime.

6.      Day Rate Plaintiff and the Putative Collective/Class Members routinely worked (and continue to work) in excess of forty (40) hours per workweek.

7.      Salary Plaintiff and the Putative Collective/Class Members are those persons who are current and former non-exempt employees of Defendants who have worked as Salaried Oilfield Workers throughout the United States at any time from May 7, 2021, through the final disposition of this matter, who were paid a salary but no overtime.

8. Salary Plaintiff and the Putative Collective/Class Members routinely worked (and continue to work) in excess of forty (40) hours per workweek.

9. During the relevant time period(s), Defendants have knowingly and deliberately failed to compensate all Plaintiffs and Putative Collective/Class Members for all hours worked in excess of forty each week on a routine and regular basis. To make matters worse, Defendants have recently failed to compensate Plaintiffs and the Putative Collective/Class Members at all.

10. The FLSA requires that minimum wage and overtime compensation earned during a workweek must be paid on the regular payday for the period in which the workweek ends. *See* 29 C.F.R. § 790.21(b); *see also* 29 C.F.R. § 778.106.

11. Therefore, Defendants' late payment of overtime, and in some cases no payment at all, violates the FLSA.

12. Further, Defendants' regular practice—including during weeks when Plaintiffs and the Putative Collective/Class Members worked in excess of 40 hours (not counting hours worked "off-the-clock")—was (and is) to automatically deduct a 30-minute meal-period from all Plaintiffs and the Putative Collective/Class Members' daily time even though they regularly worked (and continue to work) "off-the-clock" through their respective meal-period breaks.

13. Defendants also do not compensate Plaintiffs and the Putative Collective/Class Members for all hours spent performing mandatory tasks such as preparing tools and loading materials and equipment prior to clocking in.

14. Additionally, Defendants do not compensate Plaintiffs and the Putative Collective/Class Members for all hours spent handling emails, phone calls, and/or texts with Defendants off the clock.

15. The effect of Defendants' practice was (and is) that all time worked by Plaintiffs and the Putative Collective/Class Members was not (and is not) counted and paid; thus, Defendants have

failed to properly compensate Plaintiffs and the Putative Collective/Class Members for all of their hours worked and resultingly failed to properly calculate Plaintiffs and the Putative Collective/Class Members' overtime under the FLSA or state law.

16.     Plaintiffs and the Putative Collective Members did not and currently do not perform work that meets the definition of exempt work under the FLSA.

17.     Plaintiffs and the Putative Collective Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

18.     Plaintiffs also pray that all similarly situated workers (Putative Collective Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

19.     Plaintiffs also pray that this Court certify the Rule 23 class actions alleged herein to allow Plaintiffs and the Putative Class Members to recover their earned straight-time wages that have been illegally withheld by Defendants.

## II.
## THE PARTIES

### A.     *Hourly Plaintiff and Putative Collective/Class Members*

20.     Plaintiff Claude Farmer was employed by Defendants within the meaning of the FLSA within this judicial district within the relevant three-year period. Plaintiff Claude Farmer did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[5]

21.     The Hourly Putative Collective Members are those current and former non-exempt Hourly Oilfield Workers of Defendants who were employed by Defendants, anywhere in the United

---

[5] The written consent of Claude Farmer is attached hereto as Exhibit "A."

States and at any time from May 7, 2021, through the final disposition of this matter, and have been subjected to the same illegal pay system under which the Hourly Plaintiff worked and was paid (or not paid as the case is here).

22.     The Hourly Putative Class Members for the Rule 23 class action are Defendants' current and former hourly Oilfield Workers who did not, and still have not, received their compensation for the work they performed for Defendants.

**B.      *Day Rate Plaintiff and Putative Collective/Class Members***

23.     Plaintiff Jose L. Salinas was employed by Defendants within the meaning of the FLSA within this judicial district within the relevant three-year period. Plaintiff Jose L. Salinas did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[6]

24.     The Day Rate Putative Collective Members are those current and former non-exempt day rate Oilfield Workers of Defendants who were employed by Defendants, anywhere in the United States and at any time from May 7, 2021, through the final disposition of this matter, and have been subjected to the same illegal pay system under which the Day Rate Plaintiff worked and was paid (or not paid as the case is here).

25.     The Date Rate Putative Class Members for the Rule 23 class action are Defendants' current and former day rate Oilfield Workers who did not, and still have not, received their compensation for the work they performed for Defendants.

**C.      *Salary Plaintiff and Putative Collective/Class Members***

26.     Plaintiff Ricardo Rodriguez was employed by Defendants within the meaning of the FLSA within this judicial district within the relevant three-year period. Ricardo Rodriguez did not

---

[6] The written consent of Jose L. Salinas is attached hereto as Exhibit "B."

receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[7]

27.     The Salary Putative Collective Members are those current and former non-exempt salary Oilfield Workers of Defendants who were employed by Defendants, anywhere in the United States and at any time from May 7, 2021, through the final disposition of this matter, and have been subjected to the same illegal pay system under which the Salary Plaintiff worked and was paid (or not paid as the case is here).

28.     The Salary Putative Class Members for the Rule 23 class action are Defendants' current and former salaried Oilfield Workers who did not, and still have not, received their compensation for the work they performed for Defendants.

### D.     *Defendants*

29.     Defendant Excell Operating, Inc. d/b/a Excell Operating Company, Inc. ("Excell"), is a Mississippi corporation, licensed to and doing business in Texas, and may be served through its registered agent for service of process: **Michael Boothe, 303 County Road 308, Tilden, Texas 78072.**

30.     Defendant Bullzeye Oilfield Service LLC ("Bullzeye") is a limited liability company organized under the laws of the state of Texas, principal place of business, as listed with the Texas Secretary of State is PO Box 368, Merkel, Texas 79536 and may be served through its registered agent for service of process: **Keith Maxey, 664 CR 307, Tye, Texas 79563.**

31.     Defendant Thomas L. Swarek ("Swarek"), is, upon information and belief, an Owner of Excell Operating, Inc. and Bullzeye Oilfield Service LLC, and Plaintiff and the Putative Collective/Class Member's employer as defined by 29 U.S.C. § 203(d). Upon information and belief, Swarek also owns the yards Defendants operate out of and store materials and equipment and owns

---

[7] The written consent of Ricardo Rodriguez is attached hereto as Exhibit "C."

the wells where Plaintiffs work and perform their services for Defendants and may be served at: **Thomas L. Swarek, 1261 Pass Rd., Gulfport, Mississippi 39501.**

32.     Defendant Michael Boothe ("Boothe") is the Director of Excell Operating, Inc., and an employer as defined by 29 U.S.C. § 203(d), and may be served at: **Michael Boothe, 303 County Road 308, Tilden, Texas 78072.**

33.     Defendant Zackry Maxey ("Z. Maxey") is the President of Bullzeye Oilfield Service LLC, and an employer as defined by 29 U.S.C. § 203(d), and may be served at: **Zackry Maxey, 2626 Century Ranch, San Antonio, Texas 78251.**

34.     Defendant Keith Maxey ("K. Maxey") is the Vice President of Bullzeye Oilfield Service LLC, and an employer as defined by 29 U.S.C. § 203(d), and may be served at: **Keith Maxey, 664 CR 307, Tye, Texas 79563.**

35.     Defendants are joint employers pursuant to 29 C.F.R. § 791.2. They have common ownership, oversight and control over Plaintiffs and the Putative Collective Members. As a result, all Defendants are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA, including the overtime provisions, with respect to the entire employment for the workweeks at issue in this case.

## III.
## JURISDICTION & VENUE

36.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. § 201 *et. seq.*

37.     This Court has personal jurisdiction over Defendants because the cause of action arose within this district as a result of each Defendant's conduct within this district.

38.     Venue is proper in the Southern District of Texas because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

39.     Specifically, Plaintiffs worked in Nueces County, Texas, Jim Wells County, Texas, and Duval County, Texas which is located within this District and Division.

40.     Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391(b).

## IV.
## ADDITIONAL FACTS

41.     Upon information and belief, Defendants and El Dorado Gas & Oil, Inc.[8] ("El Dorado"), which is owned and controlled by Defendant Swarek, operate as a single collective enterprise with a unified operation to produce natural resources.[9]

42.     Defendants jointly engage in the business of providing oilfield services through a joint workforce—Plaintiffs and the Putative Collective/Class Members.

43.     Defendants are not completely disassociated with respect to the employment of Plaintiffs. Upon information and belief, Defendants share control of Plaintiffs, directly or indirectly, by reason of the fact that Defendants are under common control.

44.     While Defendants are legally separate entities, they are highly integrated with respect to ownership and operations. Defendants operate as a single business with a unified operation, common management, common headquarters, common maintenance of records, and Plaintiffs performed work which simultaneously benefited Defendants.

45.     The entities that Plaintiffs were paid by differed from paycheck to paycheck.

46.     For instance, despite performing the same job duties for the ubiquitous "El Dorado" Plaintiff Claude Farmer would receive a check from Excell Operating Inc. for one pay-period's work

---

[8] El Dorado filed for bankruptcy in the Bankruptcy Court for the Southern District of Mississippi on December 22, 2023, Defendants named herein have continued operations.

[9] El Dorado, "through its refinery combined with its extensive and multifaceted list of wholly owned contracting service companies are committed to the development and consolidation of high-quality services for the oil industry in general." https://eldoradogasandoilinc.com/about-us

and would receive another check from Excell Operating Company, Inc. for the next pay period. He would also submit his expenses to yet another entity, Bullzeye Oilfield Services, LLC.

47.     Upon information and belief, Defendants and El Dorado share use and control of the yards where Defendants and El Dorado store materials and equipment.

48.     Upon information and belief, Defendants and El Dorado share an office and maintained records in the same office located at one of the shared yards.

49.     Upon information and belief, the yards are owned by Defendant Swarek.

50.     Upon information and belief, Plaintiffs were assigned to, and did work, at El Dorado's/Defendant Swarek's "in house" wells throughout Texas.

51.     To the extent that any one entity (not individual) named as a Defendant in this lawsuit does not satisfy the standard for enterprise coverage, they each jointly constitute a single unified enterprise. *See* 29 C.F.R. § 1620.7(b).

52.     Defendants along with El Dorado (the "single enterprise") performed related auxiliary service activities generally necessary to the operation of the single enterprise.

53.     Defendants, along with El Dorado, performed related activities in employing Plaintiffs and the Putative Collective/Class Members to perform services in the oil and gas industry.

54.     The single enterprise operated through unified operation and common control for a common business purpose. This is evidenced by the substantial continuity in employment experienced by Plaintiffs while being paid in the same manner by different entities in the single enterprise.

55.     The single enterprise combines and organizes the performance of related activities so as to be in effect an organized business system which is directed to the accomplishment of a common business purpose.

56.     Furthermore, the single enterprise Defendants all employed and/or jointly employed Plaintiffs and the Putative Collective/Class Members at times relevant to this lawsuit.

57.     The single enterprise Defendants may be technically separate, but in fact are related or overlapping employers. Specifically, upon information and belief, the single enterprise was generally controlled by Swarek, and all relevant employment decisions were made by Swarek.

## A.     *Defendants are Joint Employers*

58.     All preceding paragraphs are incorporated herein.

59.     Defendants are joint employers pursuant to 29 C.F.R. § 791.2.

60.     Defendants directly or indirectly hired all Plaintiffs and the Putative Collective/Class Members, controlled their work schedules and conditions of employment, and determined the rate and method of the payment of wages.

61.     While Defendants may allege they operate legally separate entities, they posted job openings as a single entity—El Dorado.[10]

62.     Defendants maintained control, oversight, and direction over Plaintiffs and the Putative Collective/Class Members, including the promulgation and enforcement of policies affecting the payment of wages for overtime compensation.

63.     Defendants controlled Plaintiffs and the Putative Collective/Class Members' work schedules and conditions of employment.

64.     Regardless of entity, Plaintiffs and the Putative Collective/Class Members were all ultimately under the common control of Swarek, Booth, K. Maxey, and Z. Maxey.

65.     Swarek, Booth, K. Maxey, and Z. Maxey exerted operational and management control over the Defendant entities, including day to day management. They were, and are, frequently present at, own, direct, control, and manage the operations.

66.     Swarek, Booth, K. Maxey, and Z. Maxey defined the primary work duties for all of Defendant entities' employees—including the Plaintiffs and the Putative Collective/Class Members

---

[10] El Dorado filed for bankruptcy on December 22, 2023.

67. Swarek, Booth, K. Maxey, and Z. Maxey set or is the control person who set the hours, work conditions, and compensation for Plaintiffs. They also have control of the books and records of Defendant entities and their employees. They further have the right to hire and fire the employees of the Defendant entities.

68. While Defendants are legally separate entities, they operate as a single business with a unified operation, common management, common headquarters, common maintenance of records, and Plaintiffs performed work which simultaneously benefited Defendants.

69. Defendants mutually benefitted from the work performed by Plaintiffs and the Putative Collective/Class Members.

70. Defendants did not act entirely independently of each other and have not been completely disassociated with respect to the work of Plaintiffs and the Putative Collective/Class Members.

71. Defendants shared the services of Plaintiffs and the Putative Collective/Class Members.

72. Defendants acted directly or indirectly in the interest of each other in relation to Plaintiffs and the Putative Collective/Class Members.

73. Specifically, Defendants dictated the practice goals and what pressing or tactical items needed to be done in order to meet the goals of the respective Defendants and/or their clients.

74. Defendants and El Dorado share use and control of the yards where Defendants and El Dorado store materials and equipment and where Defendants' employees report to.

75. Upon information and belief, Defendants and El Dorado share an office and maintained records in the same office located at one of the shared yards. Upon information and belief, the yards are owned by Defendant Swarek.

76.     Upon information and belief, Plaintiffs were assigned to, and did work, at "in house" wells throughout Texas. Upon information and belief, the "in house" wells are owned by Defendant Swarek and/or El Dorado.

77.     Moreover, all Defendants have the power to hire and fire Plaintiffs and the Putative Collective/Class Members; supervise and control Plaintiffs and the Putative Collective/Class Members' work schedules and conditions of their employment; determine their rate and method of payment; and, maintain their employment records.

78.     Upon information and belief, Plaintiffs and the Putative Collective/Class Members were not consistently paid by one specific Defendant entity. Rather, upon information and belief, the Defendant entity that wrote their paycheck would differ from paycheck to paycheck. Further, their paycheck could come from one Defendant entity and their tax documents would be from a different Defendant entity.

79.     Regardless of which entity paid Plaintiffs or issued them tax documents, their supervisors and type of work did not change. Accordingly, each Defendant in this case jointly employed Plaintiffs and the Putative Collective/Class Members.

80.     As a result, all Defendants are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA, including the overtime provisions, with respect to the entire employment for the workweeks at issue in this case.

**B.      *Plaintiffs and the Putative Collective/Class Members are Similarly Situated***

81.     To provide their services, Defendants employed (and continues to employ) numerous Oil Field Workers—including Plaintiffs and the individuals that make up the putative or potential collectives/classes. While exact job titles may differ, these employees were subjected to the same or similar illegal pay practices for similar work throughout the United States.

### a.    Hourly Plaintiff

82.    Hourly Plaintiff and the Putative Collective/Class Members are (or were) non-exempt Hourly Oilfield Workers employed by Defendants for the relevant time-period preceding the filing of this Complaint through the final disposition of this matter.

83.    Moreover, Hourly Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their job duties, their pay structure and, as set forth below, the policies of Defendants resulting in the complained of FLSA violations.

84.    Hourly Plaintiff and the Putative Collective/Class Members regularly worked in excess of forty (40) hours per week and typically worked approximately 60-70 hours per workweek, but were not paid for all hours worked or the proper amount of overtime.

85.    Often times Hourly Plaintiff did not receive their pay and/or overtime pay until weeks later in violation of the most basic tenets of the FLSA—that is, a day late truly is a dollar short.

86.    To make matters worse, in late 2023, Defendants stopped paying Plaintiffs and the Putative Collective/Class Members completely and they have not been paid at all for their work that was performed.

87.    Hourly Plaintiff Claude Farmer worked for Defendants as a Gate Guard, was paid an hourly rate of $17.00 an hour, and was to be paid $25.00 a day for usage of his trailer, and has not been paid at all for his work that was performed during the pay period of approximately December 3, 2023, through February 2, 2024.

88.    Accordingly, Defendants' pay policies and practices violated (and continue to violate) the FLSA and state law.

89.    Further, Defendants have a policy that Oilfield Workers, such as Hourly Plaintiff and the Putative Collective/Class Members, automatically have thirty (30) minutes per day for a meal period deducted from his or her hours worked.

90.     Defendants were (and continue to be) aware that Hourly Plaintiff and the Putative Collective/Class Members regularly worked (and continue to work) through their 30-minute meal periods without pay in violation of the FLSA and state law.

91.     In other words, for each 5-day workweek, Defendants deducted (and continue to deduct) a minimum of 2.5 hours from each workweek's total "on-the-clock" hours. For a 6-day workweek, Defendants deducted (and continue to deduct) a minimum of 3 hours from each workweek's total "on-the-clock" hours.

92.     Defendants' systematic deduction of the 30-minute meal period from Plaintiffs and the Putative Collective/Class Members' "on-the-clock" time resulted (and continues to result) in Hourly Plaintiff and the Putative Collective/Class Members working overtime hours for which they were (and are) not compensated at a rate not less than time and one-half as is required by the FLSA.

93.     Defendants' systematic deduction of the 30-minute meal period from actual hours worked in excess of 40 hours per workweek deprived (and continues to deprive) Hourly Plaintiff and the Putative Collective/Class Members of the required and proper amount of overtime pay in violation of the FLSA.

94.     In addition, as part of their job responsibilities, on occasion, Hourly Plaintiff and the Putative Collective/Class Members are required to prepare and/or load equipment and/or tools prior to clocking in at the beginning of each shift.

95.     Hourly Plaintiff and the Putative Collective/Class Members' preparation and loading of tools and equipment are integral and indispensable to their core job duties and therefore compensable under the FLSA.

96.     Hourly Plaintiff and the Putative Collective/Class Members' preparation and loading of tools and equipment are not *de minimis* in nature as it takes approximately fifteen (15) minutes to complete.

97. Hourly Plaintiff and the Putative Collective/Class Members performed (and continue to perform) their preparation and loading of tools and equipment a "off-the-clock" and without pay.

98. Defendants knew and at times directed Hourly Plaintiff and the Putative Collective/Class Members to perform their preparation and loading of tools and equipment "off-the-clock" in violation of the FLSA.

99. Defendants did not (and do not) compensate Hourly Plaintiff and the Putative Collective/Class Members for performing their preparation and loading of tools and equipment "off-the-clock."

100. As a result of Defendants' failure to compensate Hourly Plaintiff and the Putative Collective/Class Members for performing work "off-the-clock," Hourly Plaintiff and the Putative Collective/Class Members worked overtime hours for which they were not compensated.

101. Defendants' failure to compensate Hourly Plaintiff and the Putative Collective/Class Members for their "off-the-clock" overtime hours violated (and continues to violate) the FLSA.

102. Defendants knew or should have known that they were miscalculating Hourly Plaintiff and the Putative Collective/Class Members' pay and that the proper amount of overtime compensation was not being paid to Plaintiffs and the Putative Collective/Class Members in violation of the FLSA.

103. Defendants knew or should have known that their failure to pay the correct amount of compensation to Plaintiffs and Putative Collective/Class Members would cause, did cause, and continues to cause financial injury to Hourly Plaintiff and the Putative Collective/Class Members.

104. Defendants knew or should have known that causing and/or requiring Plaintiffs and the Putative Collective/Class Members to perform necessary work "off-the-clock" would cause, did cause, and continues to cause financial injury to Hourly Plaintiff and the Putative Collective/Class Members.

105.     Defendants' actions therefore constitute willful violations under the FLSA and were not made in good faith.

### b.     *Day Rate Plaintiff*

106.     Day Rate Plaintiff and the Putative Collective/Class Members are (or were) Day Rate Oilfield Workers who were paid a day rate and no overtime and were employed by Defendants for the relevant time-period preceding the filing of this Complaint through the final disposition of this matter.

107.     Moreover, Day Rate Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their job duties, their pay structure and, as set forth below, the policies of Defendants resulting in the complained of FLSA violations.

108.     Pursuant to a centralized, company-wide policy, pattern and/or practice, Day Rate Plaintiff and the Putative Class Members were (and continue to be) misclassified by Defendants as exempt from receiving overtime under the FLSA and/or misclassified Day Rate Plaintiff and the Putative Class Members as independent contractors not covered by the FLSA.

109.     Defendants paid Day Rate Plaintiff and the Putative Collective/Class Members a day rate but no overtime.

110.     Defendants did not pay its Day Rate Plaintiff and the Putative Collective/Class Members for days in which they did not work.

111.     Defendants also did not provide a guaranteed minimum salary to its Day Rate Plaintiff and the Putative Collective/Class Members.

112.     While exact job titles may differ, these workers were subjected to the same or similar illegal pay practices for similar work throughout the United States.

113.    Importantly, none of the FLSA exemptions relieving a covered employer (such as Defendants) of the statutory duty to pay its employees overtime at one and one-half times the regular ate of pay apply to Day Rate Plaintiff and the Putative Collective/Class Members.

114.    Day Rate Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their pay structure in that they are all paid on a day rate basis and are all denied overtime compensation for hours worked in excess of forty (40) hours in a workweek.

115.    Day Rate Plaintiff and the Putative Collective/Class Members are similarly situated with respect to the policies (and practices) of Defendants resulting in the complained of FLSA violations.

116.    The FLSA mandates that overtime be paid at one and one-half times an employee's regular rate of pay.

117.    Defendants denied Day Rate Plaintiff and the Putative Collective/Class Members overtime pay as a result of a widely applicable, illegal pay practice.

118.    Day Rate Plaintiff and the Putative Collective/Class Members regularly worked in excess of forty (40) hours per week, but were not paid for all hours worked or the proper amount of overtime.

119.    Defendants applied this pay practice despite clear and controlling law that states that Day Rate Plaintiff and the Putative Collective/Class Members were entitled to overtime pay.

120.    Defendants have employed other individuals who perform(ed) the same or similar job duties under the same pay provisions as Day Rate Plaintiff.

121.    Day Rate Plaintiff and the Putative Collective/Class Members did not (and currently do not) perform work that meets the definition of exempt work under the FLSA; they were non-exempt employees of Defendants entitled to the protections of the FLSA.

122.     Alternatively, Defendants improperly classified Day Rate Plaintiff and the Putative Collective/Class Members as independent contractors.

123.     This classification was improper because Day Rate Plaintiff and the Putative Collective/Class Members were not in business for themselves.

124.     Instead, they were economically dependent upon Defendants.

125.     Defendants paid Day Rate Plaintiff and the Putative Collective/Class Members a day rate but failed to pay Day Rate Plaintiff and the Putative Collective/Class Members for all hours worked and failed to pay them any overtime compensation.

126.     Day Rate Plaintiff and the Putative Collective/Class Members worked exclusively for Defendants as oilfield workers.

127.     Day Rate Plaintiff and the Putative Collective/Class Members' primary job duties involved providing oilfield services for Defendants wells throughout Texas at the direction of Defendants.

128.     Defendants scheduled Day Rate Plaintiff to work over forty (40) hours nearly every (if not every) workweek that he performed services for Defendants.

129.     Although it is well-known that blue-collar workers like Day Rate Plaintiff and the Putative Collective/Class Members are not exempt from overtime, Defendants did not pay them the overtime compensation as required by the FLSA for hours worked in excess of forty (40) in a workweek.

130.     Day Rate Plaintiff conducted his day-to-day work for Defendants within mandatory and designed parameters and in accordance with pre-determined operational plans created by Defendants.

131.     Day Rate Plaintiff's daily and weekly activities were mostly pre-determined and governed by standardized plans, procedures, and checklists created by Defendants.

132.     Virtually every job function of Day Rate Plaintiff was pre-determined by Defendants, including the tools to use at a job site, Day Rate Plaintiff's schedule of work, and related work duties.

133.     Day Rate Plaintiff was prohibited from varying his job duties outside of the predetermined parameters.

134.     Moreover, Day Rate Plaintiff's job functions were primarily manual labor in nature, and did not require a college education or other advanced degree.

135.     Day Rate Plaintiff relied on his hands, physical skills, and energy to perform manual and routine labor in the oilfields of the United States.

136.     Defendants determined the hours Day Rate Plaintiff worked.

137.     Defendants set Day Rate Plaintiff's pay and controlled the number of hours he worked on a weekly basis.

138.     Defendants set all employment-related policies applicable to Day Rate Plaintiff.

139.     Defendants maintained control over pricing and marketing.

140.     Defendants owned or controlled the equipment and supplies that Day Rate Plaintiff used to perform his work.

141.     Defendants jointly held the power to hire and fire Day Rate Plaintiff.

142.     Defendants made all personnel and payroll decisions with respect to Day Rate Plaintiff including but not limited to, the decision to pay him a day rate wage for all hours worked with no overtime pay.

143.     Defendants reimbursed Day Rate Plaintiff for certain expenses.

144.     Defendants provided tools and equipment that Day Rate Plaintiff used.

145.     Day Rate Plaintiff did not employ his own workers.

146.     Day Rate Plaintiff worked continuously for Defendants on a permanent full-time basis.

147.     Defendants, instead of Day Rate Plaintiff, made the large capital investments in leases, buildings, equipment, tools, and supplies.

148.     Day Rate Plaintiff relied exclusively on Defendants for his work.

149.     Day Rate Plaintiff did not market any business or services of his own.

150.     Instead, Day Rate Plaintiff worked the hours assigned by Defendants, performed duties assigned by Defendants, worked on projects assigned by Defendants, and worked for the benefit of Defendants.

151.     Day Rate Plaintiff did not earn a profit based on any business investment of his own.

152.     Rather, Day Rate Plaintiff's only earning opportunity was based on the number of hours he was allowed to work, which was controlled by Defendants.

153.     The FLSA mandates that overtime be paid at one and one-half times an employee's regular rate of pay.

154.     Because Defendants failed to compensate Day Rate Plaintiff time and a half for all hours worked in excess of forty (40) in a workweek, Defendants' pay practices violated the FLSA.

155.     Defendants followed this pay practice despite clear and controlling law that states that Day Rate Plaintiff was a non-exempt employee, not an independent contractor.

156.     Often times Day Rate Plaintiff did not receive their pay and/or overtime pay until weeks later in violation of the most basic tenets of the FLSA—that is, a day late truly is a dollar short.

157.     To make matters worse, in late 2023, Defendants stopped paying Plaintiffs and the Putative Collective/Class Members completely and they have not been paid at all for their work that was performed.

158.     Day Rate Plaintiff Jose L. Salinas worked for Defendants has a Rig Superintendent, was paid a day rate of $450.00, and was to receive $100.00 per day for usage of his personal vehicle, and has not been paid at all for his work that was performed during the pay period of approximately

December 4, 2023, through January 12, 2024.

159.     Defendants knew or should have known that they were miscalculating Day Rate Plaintiff and the Putative Collective/Class Members' pay and that the proper amount of overtime compensation was not being paid to Day Rate Plaintiff and the Putative Collective/Class Members in violation of the FLSA.

160.     Defendants knew or should have known that their failure to pay the correct amount of compensation to Day Rate Plaintiff and Putative Collective/Class Members would cause, did cause, and continues to cause financial injury to Day Rate Plaintiff and the Putative Collective/Class Members.

161.     Defendants' actions therefore constitute willful violations under the FLSA and were not made in good faith.

### c.     *Salary Plaintiff*

162.     Salary Plaintiff and the Putative Collective/Class Members are (or were) Salaried Oilfield Workers who were paid a salary and no overtime and were employed by Defendants for the relevant time-period preceding the filing of this Complaint through the final disposition of this matter.

163.     Moreover, Salary Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their job duties, their pay structure and, as set forth below, the policies of Defendants resulting in the complained of FLSA violations.

164.     Pursuant to a centralized, company-wide policy, pattern and/or practice, Salary Plaintiff and the Putative Class Members were (and continue to be) misclassified by Defendants as exempt from receiving overtime under the FLSA.

165.     Defendants paid Salary Plaintiff and the Putative Collective/Class Members a salary but no overtime even though they regularly worked in excess of forty (40) hours in a week.

166. While exact job titles may differ, these workers were subjected to the same or similar illegal pay practices for similar work throughout the United States.

167. Importantly, none of the FLSA exemptions relieving a covered employer (such as Defendants) of the statutory duty to pay its employees overtime at one and one-half times the regular ate of pay apply to Salary Plaintiff and the Putative Collective/Class Members.

168. Salary Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their pay structure in that they are all paid on a salary basis and are all denied overtime compensation for hours worked in excess of forty (40) hours in a workweek.

169. Salary Plaintiff and the Putative Collective/Class Members are similarly situated with respect to the policies (and practices) of Defendants resulting in the complained of FLSA violations.

170. The FLSA mandates that overtime be paid at one and one-half times an employee's regular rate of pay.

171. Defendants denied Salary Plaintiff and the Putative Collective/Class Members overtime pay as a result of a widely applicable, illegal pay practice.

172. Salary Plaintiff and the Putative Collective/Class Members regularly worked in excess of forty (40) hours per week, but were not paid for all hours worked or the proper amount of overtime.

173. Defendants have employed other individuals who perform(ed) the same or similar job duties under the same pay provisions as Salary Plaintiffs.

174. Salary Plaintiffs and the Putative Collective/Class Members did not (and currently do not) perform work that meets the definition of exempt work under the FLSA.

175. Salary Plaintiff and the Putative Collective/Class Members did not exercise independent discretion and/or judgment on matters of significance on behalf of Defendants.

176. Salary Plaintiff and the Putative Collective/Class Members did not have authority to formulate, affect, interpret, or implement management policies or operating practices of Defendants.

177. Salary Plaintiffs and the Putative Collective/Class Members did not have the primary duty of performing office or non-manual work directly related to the management or general business operations of Defendants.

178. Salary Plaintiff and the Putative Collective/Class Members did not control or have authority over other employees' (or their own) work schedules.

179. Salary Plaintiff and the Putative Collective/Class Members did not control or have authority over other employees' (or their own) rates of compensation.

180. Salary Plaintiff and the Putative Collective/Class Members did not control or have authority over other employees' (or their own) changes of employment status.

181. Salary Plaintiff and the Putative Collective/Class Members did not have the authority to hire or fire other employees.

182. Salary Plaintiff and the Putative Collective/Class Members suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees were not given particular weight.

183. Salary Plaintiff and the Putative Collective/Class Members duties did not include the exercise of independent discretion or judgment.

184. Salary Plaintiff and the Putative Collective/Class Members could not deviate from Defendants' requirements or instructions without permission.

185. Salary Plaintiff and the Putative Collective/Class Members did not utilize any special skills or training in the course of their work for Defendants.

186. Salary Plaintiff  and the Putative Collective/Class Members did not possess a specialized degree or certification that they utilized in the course of their work for Defendants.

187. The performance of manual labor occupied the majority of Salary Plaintiff and the Putative Collective/Class Members' working hours.

188.     Salary Plaintiff and the Putative Collective/Class Members completed their work within designed parameters and in accordance with pre-determined plans created by Defendants.

189.     Salary Plaintiff and the Putative Collective/Class Members were not permitted to deviate from these parameters or plans and did not exercise discretion and independent judgment with respect to matters of significance.

190.     Instead, Salary Plaintiff and the Putative Collective/Class Members performed work directly related to the production side of Defendants' business.

191.     Salary Plaintiff and the Putative Collective/Class Members were not exempt from the overtime requirements of the FLSA by reason of any FLSA exemption.

192.     Defendants did not perform a person-by-person analysis of the job duties of Salary Plaintiff and the Putative Collective/Class Members when making the decision to uniformly classify them as exempt from the overtime protections of the FLSA.

193.     Salary Plaintiff and the Putative Collective/Class Members regularly worked in excess of forty (40) hours per week but never received overtime compensation.

194.     The FLSA mandates that overtime be paid at one and one-half times an employee's regular rate of pay for all hours worked over forty (40) each week.

195.     Although it is well-known that manual laborers like Salary Plaintiff and the Putative Collective/Class Members are ***not*** exempt from overtime, Defendants did not pay Salary Plaintiff and the Putative Collective/Class Members the additional overtime premium required by the FLSA for hours worked in excess of forty (40) in a workweek.

196.     Defendants applied this pay practice despite clear and controlling law that states that the routine and manual labor duties performed by Salary Plaintiff and the Putative Collective/Class Members consisted of ***non-exempt*** work.

197.	Defendants denied Salary Plaintiff and the Putative Collective/Class Members overtime pay as a result of a widely applicable, illegal pay practice.

198.	Because Defendants did not pay Salary Plaintiff and the Putative Collective/Class Members overtime for all hours worked in excess of forty (40) in a workweek, Defendants' pay policies and practices violate the FLSA.

199.	Further, often times Salary Plaintiff did not receive their pay and/or overtime pay until weeks later in violation of the most basic tenets of the FLSA—that is, a day late truly is a dollar short.

200.	To make matters worse, in late 2023, Defendants stopped paying Plaintiffs and the Putative Collective/Class Members completely and they have not been paid at all for their work that was performed.

201.	Plaintiff Ricardo Rodriguez worked for Defendants has a Frac Manager, was paid a salary of $85,000 per year, and has not been paid at all for his work that was performed during the pay period of approximately December 4, 2023, through January 26, 2024.

202.	Accordingly, Defendants' pay policies and practices violated (and continue to violate) the FLSA and state law.

203.	Defendants knew or should have known that they were miscalculating Salary Plaintiff and the Putative Collective/Class Members' pay and that the proper amount of overtime compensation was not being paid to Plaintiffs and the Putative Collective/Class Members in violation of the FLSA.

204.	Defendants knew or should have known that their failure to pay the correct amount of compensation to Salary Plaintiff and Putative Collective/Class Members would cause, did cause, and continues to cause financial injury to Salary Plaintiff and the Putative Collective/Class Members.

205.	Defendants' actions therefore constitute willful violations under the FLSA and were not made in good faith.

**V.**

**CAUSE OF ACTION**

**COUNT ONE – HOURLY PLAINTIFF**
**(Collective Action Alleging FLSA Violations)**

**A.      FLSA COVERAGE**

206.      All previous paragraphs are incorporated as though fully set forth herein.

207.      The Hourly Plaintiffs' FLSA Collective is defined as:

**ALL CURRENT AND FORMER HOURLY OILFIELD WORKERS WHO WORKED FOR EXCELL OPERATING INC., EXCELL OPERATING COMPANY, INC., BULLZEYE OILFIELD SERVICE LLC, THOMAS L. SWAREK, MICHAEL BOOTHE, KEITH MAXEY, OR ZACKRY MAXEY ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM MAY 7, 2021 THROUGH THE FINAL DISPOSITION OF THIS MATTER ("Hourly FLSA Collective" or "Hourly FLSA Collective Members").**

208.      At all times hereinafter mentioned, Defendants have been joint employers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

209.      At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

210.      At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

211.      Specifically, Defendants operate on interstate highways, purchase materials through commerce, transport materials through commerce and on the interstate highways, and conduct

transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail and the Internet.

212. During the respective periods of Hourly Plaintiff and the Hourly FLSA Collective Members' employment by Defendants, these individuals provided services for Defendants that involved interstate commerce for purposes of the FLSA.

213. In performing the operations described above, Hourly Plaintiff and the Hourly FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

214. Specifically, Hourly Plaintiff and the Hourly FLSA Collective Members are (or were) non-exempt employees of Defendants who were engaged in mechanics, welding, and other general labor and oilfield services for Defendants and their customers. 29 U.S.C. § 203(j).

215. At all times hereinafter mentioned, Hourly Plaintiff and the Hourly FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

216. The proposed collective of similarly situated employees, i.e. FLSA collective members, sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 207.

217. The precise size and identity of the proposed collective should be ascertainable from the business records, tax records, and/or employee and personnel records of Defendants.

**B.  FAILURE TO PAY WAGES AND OVERTIME UNDER THE FAIR LABOR STANDARDS ACT**

218. Defendants violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without (a) compensating such non-exempt employees for all the hours they worked in excess of forty

(40) hours per week at rates at least one and one-half times the regular rates for which they were employed, and (b) not compensating such non-exempt employees the amount of overtime compensation they should have been paid on the next scheduled pay date.

219.    Moreover, Defendants knowingly, willfully, and with reckless disregard carried out their illegal pattern of (a) failing to timely pay Hourly Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week, and (b) failing to pay Hourly Plaintiff and other similarly situated employees for any of the hours they worked in certain workweeks. 29 U.S.C. § 255(a).

220.    Defendants knew or should have known their pay practices were in violation of the FLSA.

221.    Defendants are sophisticated parties and employers, and therefore knew (or should have known) their pay policies were in violation of the FLSA.

222.    Hourly Plaintiff and the Hourly FLSA Collective Members, on the other hand, are (and were) unsophisticated laborers who trusted Defendants to pay them according to the law.

223.    The decision and practice by Defendants to not pay Hourly Plaintiff and the Hourly FLSA Collective Members overtime for all hours worked over forty (40) each week and in some cases to not pay for any hours worked at all was neither reasonable nor in good faith.

224.    Accordingly, for any workweeks in which no compensation was paid at all, Hourly Plaintiff and the Hourly FLSA Collective Members are entitled to be paid their hourly rate for all straight time hours up to forty (40) hours, and overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

225.    For any workweeks in which Hourly Plaintiff and the Hourly FLSA Collective Members worked in excess of forty (40) hours per workweek and did not receive overtime

compensation for all hours worked in excess of forty (40) hours per workweek on the next scheduled pay date, Hourly Plaintiff and the Hourly FLSA Collective Members are entitled to liquidated damages in an amount equal to their overtime compensation, plus attorneys' fees and costs.

## C. COLLECTIVE ACTION ALLEGATIONS

226. All previous paragraphs are incorporated as though fully set forth herein.

227. Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of Defendants' employees who are (or were) similarly situated to Hourly Plaintiff with regard to the work they performed and the manner in which they were paid, untimely paid or, in some cases, not paid at all.

228. Other similarly situated employees of Defendants have been victimized by Defendants' patterns, practices, and policies, which are in willful violation of the FLSA.

229. The FLSA Collective Members are defined in Paragraph 207.

230. Defendants' failure to pay Hourly Plaintiff and the Hourly FLSA Collective Members overtime compensation for all hours worked in excess of forty (40) hours per workweek at the rates required by the FLSA, and, in some cases, the failure to pay at all, results from generally applicable policies and practices of Defendants, and does not depend on the personal circumstances of Hourly Plaintiff or the Hourly FLSA Collective Members.

231. Thus, Hourly Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

232. The specific job titles or precise job requirements of the various Hourly FLSA Collective Members does not prevent collective treatment.

233. All of the Hourly FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each week.

234. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

235. Absent a collective action, many members of the proposed FLSA collective will not likely obtain redress of their injuries and Defendants will retain the proceeds of their violations.

236. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

237. Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 207 and notice should be promptly sent.

**COUNT TWO – DAY RATE PLAINTIFF**
**(Collective Action Alleging FLSA Violations)**

**A.     FLSA COVERAGE**

238. All previous paragraphs are incorporated as though fully set forth herein.

239. The Day Rate Plaintiffs' FLSA Collective is defined as:

**ALL CURRENT AND FORMER OILFIELD WORKERS WHO WORKED FOR EXCELL OPERATING INC., EXCELL OPERATING COMPANY, INC., BULLZEYE OILFIELD SERVICE LLC, THOMAS L. SWAREK, MICHAEL BOOTHE, KEITH MAXEY, OR ZACKRY MAXEY ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM MAY 7, 2021 THROUGH THE FINAL DISPOSITION OF THIS MATTER AND WERE PAID A DAY RATE BUT NO OVERTIME. ("Day Rate FLSA Collective" or "Day Rate FLSA Collective Members").**

240. At all times hereinafter mentioned, Defendants have been joint employers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

241. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

242. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the

FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

243.    Specifically, Defendants operate on interstate highways, purchase materials through commerce, transport materials through commerce and on the interstate highways, and conduct transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail and the Internet.

244.    During the respective periods of Day Rate Plaintiff and the Day Rate FLSA Collective Members' employment by Defendants, these individuals provided services for Defendants that involved interstate commerce for purposes of the FLSA.

245.    In performing the operations described above, Day Rate Plaintiff and the Day Rate FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

246.    Specifically, Day Rate Plaintiff and the Day Rate FLSA Collective Members are (or were) non-exempt employees of Defendants who were engaged in mechanics, welding, and other general labor and oilfield services for Defendants and their customers. 29 U.S.C. § 203(j).

247.    At all times hereinafter mentioned, Day Rate Plaintiff and the Day Rate FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

248.     The proposed collective of similarly situated employees, i.e. FLSA collective members, sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 239.

249.     The precise size and identity of the proposed collective should be ascertainable from the business records, tax records, and/or employee and personnel records of Defendants.

## B.     FAILURE TO PAY WAGES AND OVERTIME UNDER THE FAIR LABOR STANDARDS ACT

250.     Defendants violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without (a) compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed, and (b) not compensating such non-exempt employees the amount of overtime compensation they should have been paid on the next scheduled pay date.

251.     Moreover, Defendants knowingly, willfully, and with reckless disregard carried out their illegal pattern of (a) failing to timely pay Day Rate Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week, and (b) failing to pay Day Rate Plaintiff and other similarly situated employees for any of the hours they worked in certain workweeks. 29 U.S.C. § 255(a).

252.     Defendants knew or should have known their pay practices were in violation of the FLSA.

253.     Defendants are sophisticated parties and employers, and therefore knew (or should have known) their pay policies were in violation of the FLSA.

254.     Day Rate Plaintiff and the Day Rate FLSA Collective Members, on the other hand, are (and were) unsophisticated laborers who trusted Defendants to pay them according to the law.

255.     The decision and practice by Defendants to not pay Day Rate Plaintiff and the Day Rate FLSA Collective Members overtime for all hours worked over forty (40) each week and in some cases to not pay for any hours worked at all was neither reasonable nor in good faith.

256.     Accordingly, for any workweeks in which no compensation was paid at all, Day Rate Plaintiff and the Day Rate FLSA Collective Members are entitled to be paid their hourly rate for all straight time hours up to forty (40) hours, and overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

257.     For any workweeks in which Day Rate Plaintiff and the Day Rate FLSA Collective Members worked in excess of forty (40) hours per workweek and did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek on the next scheduled pay date, Day Rate Plaintiff and the Day Rate FLSA Collective Members are entitled to liquidated damages in an amount equal to their overtime compensation, plus attorneys' fees and costs.

### D.     COLLECTIVE ACTION ALLEGATIONS

258.     All previous paragraphs are incorporated as though fully set forth herein.

259.     Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of Defendants' employees who are (or were) similarly situated to Day Rate Plaintiff with regard to the work they performed and the manner in which they were paid, untimely paid or, in some cases, not paid at all.

260.     Other similarly situated employees of Defendants have been victimized by Defendants' patterns, practices, and policies, which are in willful violation of the FLSA.

261.     The Day Rate FLSA Collective Members are defined in Paragraph 239.

262.     Defendants' failure to pay Day Rate Plaintiff and the Day Rate FLSA Collective Members overtime compensation for all hours worked in excess of forty (40) hours per workweek at the rates required by the FLSA, and, in some cases, the failure to pay at all, results from generally

applicable policies and practices of Defendants, and does not depend on the personal circumstances of Day Rate Plaintiff or the Day Rate FLSA Collective Members.

263. Thus, Day Rate Plaintiff's experiences are typical of the experiences of the Day Rate FLSA Collective Members.

264. The specific job titles or precise job requirements of the various Day Rate FLSA Collective Members does not prevent collective treatment.

265. All of the Day Rate FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each week.

266. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

267. Absent a collective action, many members of the proposed Day Rate FLSA collective will not likely obtain redress of their injuries and Defendants will retain the proceeds of their violations.

268. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

269. Accordingly, the Day Rate FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 239 and notice should be promptly sent.

## COUNT THREE – SALARY PLAINTIFF
### (Collective Action Alleging FLSA Violations)

**A.**   **FLSA COVERAGE**

270. All previous paragraphs are incorporated as though fully set forth herein.

271. The Salary FLSA Collective is defined as:

**ALL CURRENT AND FORMER OILFIELD WORKERS WHO WORKED FOR EXCELL OPERATING INC., EXCELL OPERATING COMPANY, INC., BULLZEYE OILFIELD SERVICE LLC, THOMAS L. SWAREK,**

**MICHAEL BOOTHE, KEITH MAXEY, OR ZACKRY MAXEY
ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM MAY 7,
2021 THROUGH THE FINAL DISPOSITION OF THIS MATTER AND
WERE PAID A SALARY BUT NO OVERTIME. ("Salary FLSA Collective" or
"Salary FLSA Collective Members").**

272.    At all times hereinafter mentioned, Defendants have been joint employers within the

meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

273.    At all times hereinafter mentioned, Defendants have been an enterprise within the

meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

274.    At all times hereinafter mentioned, Defendants have been an enterprise engaged in

commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the

FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the

production of goods for commerce, or employees handling, selling, or otherwise working on goods

or materials that have been moved in or produced for commerce by any person, or in any closely

related process or occupation directly essential to the production thereof, and in that that enterprise

has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00

(exclusive of excise taxes at the retail level which are separately stated).

275.    Specifically, Defendants operate on interstate highways, purchase materials through

commerce, transport materials through commerce and on the interstate highways, and conduct

transactions through commerce, including the use of credit cards, phones and/or cell phones,

electronic mail and the Internet.

276.    During the respective periods of Salary Plaintiffs and the Salary FLSA Collective

Members' employment by Defendants, these individuals provided services for Defendants that

involved interstate commerce for purposes of the FLSA.

277.    In performing the operations described above, Salary Plaintiff and the Salary FLSA

Collective Members were engaged in commerce or in the production of goods for commerce within

the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

278.  Specifically, Salary Plaintiff and the Salary FLSA Collective Members are (or were) non-exempt employees of Defendants who were engaged in mechanics, welding, and other general labor and oilfield services for Defendants and their customers. 29 U.S.C. § 203(j).

279.  At all times hereinafter mentioned, Salary Plaintiff and the Salary FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

280.  The proposed collective of similarly situated employees, i.e. Salary FLSA collective members, sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 271.

281.  The precise size and identity of the proposed collective should be ascertainable from the business records, tax records, and/or employee and personnel records of Defendants.

## B.  FAILURE TO PAY WAGES AND OVERTIME UNDER THE FAIR LABOR STANDARDS ACT

282.  Defendants violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without (a) compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed, and (b) not compensating such non-exempt employees the amount of overtime compensation they should have been paid on the next scheduled pay date.

283.  Moreover, Defendants knowingly, willfully, and with reckless disregard carried out their illegal pattern of (a) failing to timely pay Salary Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week, and (b)

failing to pay Salary Plaintiff and other similarly situated employees for any of the hours they worked in certain workweeks. 29 U.S.C. § 255(a).

284.     Defendants knew or should have known their pay practices were in violation of the FLSA.

285.     Defendants are sophisticated parties and employers, and therefore knew (or should have known) their pay policies were in violation of the FLSA.

286.     Salary Plaintiff and the Salary FLSA Collective Members, on the other hand, are (and were) unsophisticated laborers who trusted Defendants to pay them according to the law.

287.     The decision and practice by Defendants to not pay Salary Plaintiff and the Salary FLSA Collective Members overtime for all hours worked over forty (40) each week and in some cases to not pay for any hours worked at all was neither reasonable nor in good faith.

288.     Accordingly, for any workweeks in which no compensation was paid at all, Salary Plaintiff and the Salary FLSA Collective Members are entitled to be paid their hourly rate for all straight time hours up to forty (40) hours, and overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

289.     For any workweeks in which Salary Plaintiff and the Salary FLSA Collective Members worked in excess of forty (40) hours per workweek and did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek on the next scheduled pay date, Salary Plaintiff and the Salary FLSA Collective Members are entitled to liquidated damages in an amount equal to their overtime compensation, plus attorneys' fees and costs.

## E.     COLLECTIVE ACTION ALLEGATIONS

290.     All previous paragraphs are incorporated as though fully set forth herein.

291. Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of Defendants' employees who are (or were) similarly situated to Salary Plaintiffs with regard to the work they performed and the manner in which they were paid, untimely paid or, in some cases, not paid at all.

292. Other similarly situated employees of Defendants have been victimized by Defendants' patterns, practices, and policies, which are in willful violation of the FLSA.

293. The Salary FLSA Collective Members are defined in Paragraph 271.

294. Defendants' failure to pay Salary Plaintiff and the Salary FLSA Collective Members overtime compensation for all hours worked in excess of forty (40) hours per workweek at the rates required by the FLSA, and, in some cases, the failure to pay at all, results from generally applicable policies and practices of Defendants, and does not depend on the personal circumstances of Salary Plaintiff or the Salary FLSA Collective Members.

295. Thus, Salary Plaintiff's experiences are typical of the experiences of the Salary FLSA Collective Members.

296. The specific job titles or precise job requirements of the various Salary FLSA Collective Members does not prevent collective treatment.

297. All of the Salary FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each week.

298. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

299. Absent a collective action, many members of the proposed Salary FLSA collective will not likely obtain redress of their injuries and Defendants will retain the proceeds of their violations.

300.     Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

301.     Accordingly, the Salary FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 271 and notice should be promptly sent.

## COUNT FOUR
### (Class Action Alleging Violations of Texas Common Law)

## A.     VIOLATIONS OF TEXAS COMMON LAW

302.     All previous paragraphs are incorporated as though fully set forth herein.

303.     Plaintiffs further bring this action pursuant to the equitable theory of *quantum meruit*. *See Artemis Seafood, Inc. v. Butcher's Choice, Inc.* No. CIV. A. 3:98-0282, 1999 WL 608853, at *3 (N.D. Tex. Aug. 11, 1999) (citing *Schuchart & Assocs. V. Solo Serve Corp.*, 1983 WL 1147, at *23 (W.D. Tex. June 29, 1983)).

304.     The Texas Class is defined as:

**ALL CURRENT AND FORMER OILFIELD WORKERS WHO WORKED FOR EXCELL OPERATING INC., EXCELL OPERATING COMPANY, INC., BULLZEYE OILFIELD SERVICE LLC, THOMAS L. SWAREK, MICHAEL BOOTHE, KEITH MAXEY, OR ZACKRY MAXEY ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM MAY 7, 2020, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("Texas Class" or "Texas Class Members").**

305.     Plaintiffs and the Texas Class Members are entitled to recover their unpaid "straight time" or "gap time" wages for services rendered on behalf of Defendants. These claims are independent of Plaintiffs' claims for unpaid overtime wages pursuant to the FLSA, and they are therefore not preempted by the FLSA. [11]

---

[11] The FLSA does not preempt Plaintiffs' *quantum meruit* claim. *See Burns v. Chesapeake Energy, Inc.*, No. SA-15-CV-1016-RP, (ECF No. 67) (W.D. Tex. Mar. 2, 2017) (recognizing that "gap time" or "straight time" claims, where the compensation sought is for hours worked in a week that are not in excess of forty and when the average wage paid is not below minimum wage, are not preempted by the FLSA); *Karna v. BP Corp. NA,*

306. Plaintiffs and the Texas Class Members provided valuable services for Defendants, at Defendants' direction and with Defendants' acquiescence.

307. Defendants accepted Plaintiffs and the Texas Class Members' services and benefited from Plaintiffs' timely dedication to Defendants and Defendants' customers.

308. Defendants were aware that Plaintiffs and the Texas Class Members expected to be compensated for the services they provided to Defendants.

309. Defendants have therefore benefited from services rendered by the Plaintiffs and the Texas Class Members and they are entitled to recover pursuant to the equitable theory of *quantum meruit*.

## B.     TEXAS COMMON LAW CLASS ALLEGATIONS

310. The Texas Class Members bring their Texas Common Law Claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by C6 to work in Texas since April 3, 2015. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051.

311. Class action treatment of the Texas Class Members is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

312. The number of Texas Class Members is so numerous that joinder of all class members is impracticable.

313. There are questions of law and fact common to the class. Plaintiffs and the Texas Class Members all share a common-law *quantum meruit* and/or debt claim against Defendants for unpaid wages. Plaintiffs and the Texas Class Members all provided valuable services for Defendants, at Defendants' direction and with Defendants' acquiescence, Defendants accepted their services and

---

*Inc.,* 11 F.Supp.3d 809, 816 (S.D. Tex. 2014) ("While Section 6 of the FLSA guarantees a minimum wage, it does not provide a right of action for employees to recover unpaid compensation in excess of that minimum wage."); *Carman v. Meritage Homes Corp.*, 37 F. Supp. 3d 860, 867 (S.D. Tex. 2014).

benefited from their services, and Defendants failed to pay them their wages for their services performed. All Defendants, as vertical employers, also failed to ensure that Plaintiffs and the Putative Class Members were compensated. *See* FED. R. CIV. P. 23(a)(2).

314.     Plaintiffs are members of the Texas Class, their claims are typical of the claims of other class members, and they has no interests that are antagonistic to or in conflict with the interests of the other class members.

315.     Plaintiffs and their counsel will fairly and adequately represent the class members and their interests. There are no conflicts of interest between Plaintiffs and the Texas Class Members. Additionally, the undersigned attorneys are financially able to prosecute the action to the fullest extent of the law.

316.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

317.     Allowing the litigation to proceed on a class wide basis is in the class members' best interest because their claims for unpaid wages are comparatively modest, thereby rendering litigation outside of the class context both expensive and burdensome.

318.     Additionally, the Texas Class Members are laborers who regularly travel from job to job. As such, it would be difficult, if not impossible for the class members to successfully prosecute their claims, before a court or commission, without representative assistance.

319.     Finally, should a class member prefer to move forward individually, they are free to follow the opt-out procedure and do so. Therefore, the Texas Class Member's interests are best served by this collective treatment and this factor favors certification. *See* FED. R. CIV. P. 23(b)(3)(A).

320.     Accordingly, the Texas Class should be certified as defined in Paragraph 304.

# VI.
# RELIEF SOUGHT

321.     Plaintiff respectfully prays for judgment against Defendants as follows:

a.     For an Order certifying the Hourly FLSA Collective as defined in Paragraph 207 and requiring Defendants to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all Putative Hourly FLSA Collective Members;

b.     For an Order approving the form and content of a notice to be sent to the Hourly FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c.     For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Hourly Plaintiffs (and those Hourly FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Hourly Plaintiffs (and those Hourly FLSA Collective Members who have joined in the suit);

d.     For an Order certifying the Day Rate FLSA Collective as defined in Paragraph 239 and requiring Defendants to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all Putative Day Rate FLSA Collective Members;

e.     For an Order approving the form and content of a notice to be sent to the Day Rate FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

f.     For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Day Rate Plaintiffs (and those Day Rate FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Day Rate Plaintiffs (and those Day Rate FLSA Collective Members who have joined in the suit);

g. For an Order certifying the Salary FLSA Collective as defined in Paragraph 271 and requiring Defendants to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all Putative Salary FLSA Collective Members;

h. For an Order approving the form and content of a notice to be sent to the Salary FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

i. For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Salary Plaintiffs (and those Salary FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Salary Plaintiffs (and those Salary FLSA Collective Members who have joined in the suit);

j. For an Order certifying Plaintiffs' common-law *quantum meruit* claims of unjust as defined in Paragraph 304 and designating Plaintiffs as the Class Representatives of the Texas Class.

k. For an Order pursuant to Texas common law awarding the Texas Class Members all damages allowed by law;

l. For an Order awarding the costs of this action;

m. For an Order awarding attorneys' fees;

n. For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

o. For an Order awarding Plaintiffs a service award as permitted by law;

p. For an Order compelling the accounting of the books and records of Defendants, at Defendants' expense; and

q. For an Order granting such other and further relief as may be necessary and appropriate.

Date: May 7, 2024                     Respectfully submitted,

**ANDERSON ALEXANDER, PLLC**

By:    /s/ Clif Alexander
**Clif Alexander**
Texas Bar No. 24064805
Federal I.D. No. 1138436
clif@a2xlaw.com
**Austin W. Anderson**
Texas Bar No. 24045189
Federal I.D. No. 777114
austin@a2xlaw.com
**Blayne Fisher**
Texas Bar No. 24090099
Federal I.D. No. 3746300
blayne@a2xlaw.com
101 N. Shoreline Blvd., Ste. 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

*Attorneys for Plaintiffs and the Putative
Collective/Class Members*